## FARRELL v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department.   May 11, 1900.)

**1. NEGLIGENCE—EXTENT OF INJURIES—EVIDENCE.**

Where plaintiff, an actress, suing for injuries sustained, testified that on joining her company, some weeks after the accident, she was so ill as to seldom be able to attend rehearsals, and was under a doctor's care all the time; that her manager well knew how ill she was; and that she was finally compelled by sickness to stop work,—it was error to exclude testimony of the manager as to what he had observed as to her physical condition during that period.

**2. SAME.**

Where plaintiff had testified that she was forced to disband her theatrical company through ill health due to injuries sued for, and not because of her incompetency as an actress, it was error to exclude the testimony of her manager as to why the company was disbanded.

Patterson, J., dissenting.

Appeal from trial term, New York county.

Action by Pauline E Farrell against the Metropolitan Street-Railway Company.   From a judgment in favor of plaintiff, defendant appeals.   Reversed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and INGRAHAM, JJ.

Charles F. Brown, for appellant.
Ernest E. Baldwin, for respondent.

INGRAHAM, J.   The plaintiff was injured while attempting to alight from one of the defendant's street-railway cars, and brought this action to recover for such injuries.   Upon her direct examination she testified that she was an actress, and at the time of the accident was rehearsing a part in a play in the American Theater, in the city of New York; that she was injured on the 27th day of August, 1897; that a few days after the injury she went to Boston, where she remained confined to her house for about two months, and then went to her father's house, at New Haven, Conn., where she remained until some time in August, when she joined, at Stamford, Conn., a theatrical company under the management of a Mr. Sammis, with whom she had an engagement; that she remained with the company for five or six weeks, during all of which time she was ill, suffering pain in her head, back, and nerves; that she was in bed most of the time; that through the day, during this engagement, she was seldom able to go to rehearsal, and was under a physician's care all of the time, and that, about six or seven weeks after she commenced, she had to give up the struggle to work; that before the accident she weighed 126 pounds, which was her normal weight, but that after the accident she weighed 98 pounds, and at the time of the trial 110 pounds.   Upon cross-examination the witness testified:   That the manager of the company during the entire period was a Mr. George Sammis.   That it was not a fact that the company had disbanded, and that she left the company because she was discharged for incompetency, or because she was an

absolute failure as an actress. That she made a complaint to Sammis that she was incompetent to perform her parts in consequence of illness. That Sammis understood that she was ill. That after they had opened the season the witness told Sammis how ill she was; that it was impossible to attend to the business matters; that she was very nervous and ill; and that she had better close right there. That after that conversation with Sammis she played about five weeks. Upon her redirect examination she again testified to her condition during the time she was conducting this theatrical tour. The defendant called Sammis as a witness, who testified that he was a theatrical manager, and had made the contract with the plaintiff which she had testified to; that she performed as an actress in connection with a company of which he was manager during the month of September, 1897; that they opened their rehearsals some two or three weeks previous to September, when the performances commenced; that during that time the witness saw the plaintiff every day; that they rehearsed all day, as a rule, commencing at about 10, terminating for lunch or dinner, and starting again in the afternoon until probably 4 or 5 o'clock; that during that period the witness had occasion to observe the condition of health in which the plaintiff was. He was asked to state "what you observed in that connection." That was objected to on the ground that it was incompetent for the witness to state what plaintiff's condition of health was. The court sustained the objection, to which the defendant excepted. Counsel for the defendant then asked the witness whether during the period of two or three weeks' rehearsal preceding September 5, 1897, the plaintiff ever complained to him of ill health. That was objected to by the plaintiff, the objection was sustained, and the defendant excepted. The witness was further asked if during the entire period "you observed anything in the appearance of the plaintiff which indicated to you that she was otherwise than in good health, or did she ever during that period make any complaint to you that she was suffering from illness of any kind?" That was objected to upon the same ground, the objection was sustained, and the defendant excepted. The witness was also asked to state what her appearance was during this period of two months that she was working under the management of the witness in connection with this company, as compared with her appearance the year before. That was also objected to, the objection was sustained, and the defendant excepted.

We think that these rulings were error, and that the defendant was entitled to have the questions answered. The nature and extent of the injuries received by the plaintiff was one of the questions most strenuously litigated upon the trial. The plaintiff had given testimony tending to show that her condition through the summer and fall of 1897 was the result of the injuries that she had received in alighting from the defendant's car, and that she had been compelled to give up this theatrical tour because of the condition of her health, the result of the injuries sustained. She had described her own condition during the time that she was acting under the management of Sammis, both upon her direct and cross examination. She had stated

that Sammis knew that she was sick; that she had on several occasions made statements to him as to her physical condition. Certainly the defendant was entitled to contradict this testimony, to show what her appearance was at the time she was conducting this theatrical enterprise, how she looked and how she acted, and to prove any declarations made by the plaintiff as to her condition at that time. It is difficult to see upon what principle those questions could have been objected to or excluded. They were most material upon the question of damages. The witness was not asked to give a medical opinion as to the condition of the plaintiff's health, but to detail to the jury what he saw as to her condition; and his evidence as to the apearance of the plaintiff was as competent upon that subject as the plaintiff's evidence was as to her condition. The respondent calls attention to the fact that the witness subsequently did answer the question, and the record shows that the witness subsequently said:

"The lady looked or appeared to me about the same, as near as I can remember, while working under my management, as compared to the way she appeared before the accident."

This was not, however, by any means, an answer to the questions. The witness was not allowed to state what he saw as to the plaintiff's condition, what she actually accomplished when working, and what indications he noticed as to her vigor and health. We think, on the whole, that competent evidence, most material to the defendant upon this question of the amount of damages, was excluded.

The witness was also asked why the company was disbanded, which was objected to as immaterial to the issues, and the objection was sustained. Counsel then stated that he wished to show by the witness that the plaintiff presented the resignation after she had been told that she was a failure, and that the company would not play any longer, and was about to be disbanded, and then she gave her two weeks' notice. The court then stated, "I understand Mr. Scribner wants to go into the reasons for stopping playing," to which counsel for the plaintiff said, "That is not an issue;" and the court then sustained the objection, and the defendant excepted. While the form of this question might be objectionable, we think the defendant was entitled to show why it was that this company was disbanded, to contradict the testimony of the plaintiff that she stopped playing because of her bad health. The defendant was certainly entitled to show that Sammis had notified her that the theatrical enterprise was a failure because of her inferior acting, and that it was for that reason that the company disbanded. The plaintiff's testimony all through tended to show that she was disabled from continuing this theatrical enterprise because of the condition of her health as the result of this injury. Any facts which would tend to contradict this testimony, or tend to show that this enterprise was not given up in consequence of the plaintiff's health, but in consequence of her failure as an actress, would be competent evidence. Although the verdict in this case was not large, as the defendant was entitled to have the evidence before the jury in determining the amount which the plaintiff was entitled to recover, we cannot say that the evidence would not have affected the verdict.

It follows that the judgment and order must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and HATCH, J., concur. RUMSEY, J., concurs in result. PATTERSON, J., dissents.